BURKE, Judge,
dissenting.
I respectfully dissent from the majority’s decision to reverse the circuit court’s order revoking Mark Caleb English’s probation. Specifically, I disagree with the main opinion’s conclusion that Ex parte Dunn, 163 So.3d 1003 (Ala.2014), mandates the reversal of the circuit court’s order revoking English’s probation.
Initially, I note that I continue to disagree with Dunn, and I invite the Alabama Supreme Court to revisit or at least limit that decision. Contrary to the holding in Dunn, I do not believe that this Court’s prior decision in Goodgain v. State, 755 So.2d 591 (Ala.Crim.App.1999), necessitated the conclusion the Supreme Court reached in Dunn, and I believe Dunn conflicts with prior decisions of the Supreme Court, including its decision in Sams v. State,"48 So.3d 665 (Ala.2010). Nevertheless, I find that the present case is distinguishable from Dunn.
“ ‘[I]t is well settled that hearsay evidence may not form the sole basis for revoking an individual’s probation.’ ” Sams v. State, 48 So.3d 665, 668 (Ala.2010) (quoting Goodgain v. State, 755 So.2d 591, 592 (Ala.Crim.App.1999) (emphasis added)). This rule arises from due-process considerations and from a concern that “ ‘[t]he use of hearsay as the sole means of proving a violation of a condition of probation denies a probationer the right to confront and to cross-examine the persons originating the information that forms the basis of the revocation.’ ” Id.
Furthermore, “the filing of charges or an arrest, standing alone, is insufficient ground for probation revocation.” Mitchell v. State, 462 So.2d 740, 742 (Ala.Crim.App.1984).
“ ‘If merely being arrested is sufficient for revocation, then revocation would lie within the discretion of police officers, rather than judicial officers. In such a case, judges would only perform the ministerial duty of determining if an arrest had been made and then signing the revocation order. The decision to revoke probation is a judicial function and should be based upon the appellant’s conduct and not upon an accusation only. The State must submit enough substantive evidence to reasonably satisfy the trier of the facts that a condition of probation was breached.’ ”
Mitchell, 462 So.2d at 742 (quoting Hill v. State, 350 So.2d 716, 718 (Ala.Crim.App.1977)).
As the Alabama Supreme Court has recognized:
“In both Mitchell and Goodgain the State presented only hearsay evidence to support a finding that the probationer had violated the conditions of his probation by committing a new offense. The State did not present a witness with personal knowledge of the charged offense who could identify the probationer as the perpetrator of the new offense. Indeed, the officers who testified at the probation-revocation hearings in those cases were not present when the new offenses were committed and the arrests were not based on either officer’s personal knowledge or witnessing of the offense. Consequently, because only hearsay evidence was presented connecting each probationer to the charged offense, the evidence in both cases was insufficient to support the probation rev *633 ocations, and the circuit court in each case exceeded the scope of its discretion in revoking the probations.”
Sams, 48 So.3d at 670 (emphasis added).
In Sams, the Alabama Supreme Court stated:
“1 “ ‘Probation or suspension of sentence comes as an act of grace to one convicted of, or pleading guilty to, a crime. A proceeding to revoke probation is not a criminal prosecution, and we have no statute requiring a formal trial. Upon a hearing of this character, the court is not bound by strict rules of evidence, and the alleged violation of a valid condition of probation need not be proven beyond a reasonable doubt.’ ”
‘“Martin v. State, 46 Ala.App. 310, 312, 241 So.2d 339, 341 (Ala.Crim.App.1970) (quoting State v. Duncan, 270 N.C. 241, 154 S.E.2d 53 (1967) (citation omitted)). Under that standard, the trial court need “only be reasonably satisfied from the evidence that the probationer has violated the conditions of his probation.” Armstrong v. State, 294 Ala. 100, 103, 312 So.2d 620, 623 (1975). Absent a' clear abuse of discretion, a reviewing court will not disturb the trial court’s conclusions. See Moore v. State, 432 So.2d 552, 553 (Ala.Crim.App.1983) and Wright v. State, 349 So.2d 124, 125 (Ala.Crim.App.1977).’
“Ex parte 778 So.2d [240,] 242 [ (Ala.2000) ]. See Rule 27.6(d)(1), Ala. R.Crim. P. (Providing that at a revocation hearing the ‘court may receive any reliable, relevant evidence not legally privileged, including hearsay,’ and the court must be reasonably satisfied from the evidence that a violation of probation occurred before revoking probation). Whether to admit hearsay evidence at a probation-revocation hearing is within the discretion of the court. Puckett v. State, 680 So.2d 980, 981 (Ala.Crim.App.1996).
[[Image here]]
“To summarize, at a probation-revocation hearing a circuit court must examine the facts and circumstances supporting each alleged violation of probation. The court may consider both hearsay and nonhearsay evidence in making its determination. The hearsay evidence, however, must be reliable, and it cannot be the sole evidence supporting the revocation of probation. Thus, a circuit court must assess the credibility of the particular witnesses at the probation-revocation hearing, the reliability of the available evidence, and the totality of the evidence in each individual case to determine whether it is reasonably satisfied that the probationer has violated a term of his or her probation and that revocation is proper. Moreover, an appellate court will disturb a circuit court’s decision only if the record establishes that the circuit court exceeded the scope of its discretion.”
Sams, 48 So.3d at 667-68 (footnote omitted).
The Supreme Court then held:
“In this case, the record establishes that the circuit court did not exceed the scope of its discretion in revoking Sams’s probation. Hearsay evidence was not the sole basis on which the circuit court found that Sams had violated the terms of his probation by committing a new offense. The State presented a mixture of nonhearsay and hearsay evidence indicating that Sams contributed to the delinquency or dependency of a child or to a child’s being in need of supervision. Officer Francis testified as to his personal knowledge of Sams’s commission of the new offense. Officer Francis testified that on the night before *634 Sams was arrested for contributing to the delinquency or dependency of a child or to the child’s being in need of supervision, he had found Sams with D.M.D., a minor, and had returned D.M.D. to her grandmother. He further testified that he saw Sams with D.M.D. in the bedroom of the apartment on the night Sams was arrested for contributing to the delinquency or dependency of a child or to a child’s being in need of supervision and witnessed his arrest. Officer Francis’s testimony unequivocally linked Sams to the new offense. Although hearsay evidence was presented to establish that D.M.D. was 16 years old, the circuit court could have determined that the hearsay evidence was reliable in light of Officer Francis’s personal knowledge of this incident and his prior incident involving Sams and D.M.D. Consequently, in this case, unlike Mitchell and Goodgain in which the State relied solely on hearsay evidence to support a finding that the probationer had committed a new offense, the State presented both reliable hearsay and nonhearsay evidence, as permitted under Rule 27.6(d), Ala. R.Crim. P., to establish that Sams had violated one of the terms of his probation. The record indicates that the State presented sufficient evidence from which the circuit court could be reasonably satisfied that Sams had violated one of the terms of his probation by committing a new offense and that the circuit court did not exceed the scope of its discretion in revoking Sams’s probation.”
Sams, 48 So.3d at 670.
In Sams, an element of the new offense — proof that the victim was a “child” — was based solely on hearsay evidence. Therefore, under Sams, the State clearly does not have to establish every element of the new offense with nonhear-say evidence, and a mixture of nonhearsay and hearsay evidence can constitute sufficient evidence from which the circuit court can be reasonably satisfied that the defendant violated the terms of his probation by committing a new offense. In the present case, the main opinion notes that “£j]ust as Gibbons’s testimony in Dunn regarding where the pants were found was based solely on hearsay, ... Davis’s testimony that the items in the photograph were the items that were reported stolen was based solely on hearsay.” English, 164 So.3d at 631 n. 2. However, again, in Sams evidence establishing that the victim was a child was based solely on hearsay. Thus, whether an element of the new offense is based solely on hearsay cannot be the sole factor in determining whether the circuit court could be reasonably satisfied that the defendant violated one of the terms of his probation by committing a new offense.
In Dunn, contrary to the situations in Mitchell and Goodgain, the State did not present only hearsay evidence. Instead, the State presented nonhearsay testimony regarding DNA results of a blood sample that was taken from a pair of pants and that matched to Dunn’s DNA. The Alabama Supreme Court held that that non-hearsay evidence was insufficient to support the revocation of Dunn’s probation because the State did not provide additional nonhearsay evidence concerning where the pants were found — although there was hearsay evidence indicating that the pants had been found with the stolen property. Specifically, the Supreme Court held that “the State has not corroborated by non-hearsay evidence the hearsay evidence connecting the pants, and by extension Dunn, to the burglary.” Dunn, 163 So.3d at 1006.
In Dunn, the Supreme Court did not distinguish Sams or other cases in which the appellate courts have held that the *635 State’s presentation of a mixture of non-hearsay and hearsay evidence was sufficient to support the revocation of the defendant’s probation. Although not explicitly stated, it appears that the distinction between Dunn and the cases that held that the State’s presentation of a mixture of nonhearsay and hearsay evidence was sufficient is that the Alabama Supreme Court determined that the non-hearsay evidence in Dunn was unreliable as a matter of law because it was too indirect or lacked a sufficient nexus to the new offense. In Dunn, although the State presented nonhearsay evidence, that nonhearsay evidence was not direct evidence of the offense and that circumstantial nonhearsay evidence was incomplete or contained a missing link to the new offense, i.e., there was not any non-hearsay evidence concerning “where the pants from which the blood sample was taken were found or connecting those pants to the robbery.” Dunn, 163 So.3d at 1006.
In the present case, I believe the non-hearsay evidence is more analogous to the nonhearsay evidence in Sams than to the nonhearsay evidence in Dunn. As the main opinion states, Assistant Chief Davis testified that he personally contacted Ater Scrap Yard in Chickasaw and learned that English had sold scrap including phone boxes, bicycle frames, and old lawn mowers at the scrap yard. Davis personally obtained photographs and receipts from the scrap yard. Daws had those photographs with him at the probation-revocation hearing. Davis identified English as the person in the photograph driving a silver Toyota pickup truck pulling a loaded trailer as it entered the scrap yard, and Davis identified some of the items being hauled by the truck in the photograph as some of the items that had been reported to him as stolen. Aso, the license plate number of the pickup truck was visible in the photograph. Davis testified that the pickup truck was owned by English’s wife. Another photograph showed the silver Toyota pickup truck leaving the scrap yard, unloaded and without the trailer.[3] (R. 23.) Davis testified that he personally looked at the scrap yard’s records and that English had presented a photo identification when he sold property to the scrap yard. Davis also received a copy of a $676.39 check representing the amount the scrap yard had paid English for a trailer and the scrap.
In the present case, -the State presented nonhearsay evidence from Assistant Chief Davis that was based on his personal knowledge or observation and that, if believed, would prove elements of the new offenses. English had the opportunity to confront and to cross-examine Davis concerning the photographs and any of the other information that Davis had personally obtained. The revocation of English’s probation was not based solely on hearsay evidence or solely on the filing of charges or an arrest; thus, his revocation did not lie solely within the discretion of police officers. The circuit court had the opportunity to consider both the hearsay and nonhearsay evidence, assess the credibility of Assistant Chief Davis, and determine whether the evidence was reliable. Based on the totality of the evidence, I find that the circuit court did not exceed the scope of its discretion in deciding that it was reasonably satisfied that English had violated a term of his probation and that revocation is proper. Unlike the situation in Dunn or Goodgain, in the present case, the State has not “‘failed to present any evidence, other than the hearsay testimony *636 of [Assistant Chief Davis], indicating that [English] had, in fact, committed the alleged [new offenses].’ ” Dunn, 163 So.3d at 1006 (quoting Goodgain, 755 So.2d at 593). Therefore, because the circuit court did not exceed the scope of its discretion when it revoked English’s probation, I would affirm the circuit court’s judgment.
Based on the foregoing, I respectfully dissent.

. As the main opinion notes, on cross-examination, Davis admitted that Bonine’s trailer was not the trailer that had been sold at the scrap yard.